UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | | |
|---|---|---|---|
| JEFFERY BRIAN WALLER, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 4:11-CR-28-HSM-CHS-1 |
| | ) | | 4:13-CV-6-HSM |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 21]. The government filed a response in opposition on April 22, 2013 [Docs. 27, 28], which Petitioner followed with numerous supplements in reply [Docs. 46, 64, 65, 66].[1] In the latter three filings, Petitioner asserted an entirely novel ground for collateral relief challenging his enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), in light of the Supreme Court's invalidation of that provisions' residual clause in *Johnson v. United States*, 135 S. Ct. 2551 (2015) [Docs. 64, 65, 66]. The United States submitted an amended response in opposition to the supplemental claim on May 12, 2016 [Doc. 67]. At the evidentiary hearing originally scheduled to address one of the ineffective assistance of counsel claims, Petitioner requested permission to file an amended petition relying exclusively on the *Johnson*-based claim for relief [Docs. 61, 64-1 (acknowledging that he was "forfeiting all

---

[1] On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FEDSET") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). After receiving notice of a conflict of interest, this Court appointed substitute CJA counsel to fulfill FEDSET's duties under the Standing Order [Docs. 59, 68]. Consistent with that appointment, counsel filed a request for relief from sentence in light of *Johnson* [Docs. 64, 65, 66].

claims not contained in the amended § 2255 petition and that said claims will be dismissed with prejudice")]; the Court agreed [Doc. 68]. On June 3, 2016, Petitioner submitted an amended petition asserting a single ground: improper enhancement in light of *Johnson* [Doc. 70].[2]

On July 5, 2016, this Court ordered additional briefing on what, if any, impact the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), has on Petitioner's categorization as an armed career criminal. In accordance therewith, the United States filed a supplemental response on August 4, 2016 [Doc. 80]; Petitioner filed a supplemental reply on August 8, 2016 [Doc. 81]. For the reasons that follow, the amended petition [Docs. 21, 70] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

I. **BACKGROUND**

In April of 2012, Petitioner pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) [Docs. 14, 15]. Based upon four prior Michigan convictions—convictions for felony breaking and entering on January 8, 1990, breaking and entering on January 9, 1990, delivery and manufacture of marijuana on July 22, 2003, and delivery and manufacture of cocaine on August 26, 2003 [Presentence Investigation Report ("PSR") ¶¶ 27–28, 36–37]—the United States Probation Office deemed Petitioner to be an armed career criminal subject to the ACCA's enhanced fifteen-year mandatory minimum sentence [*Id.* ¶¶ 15, 66]. When combined with an advisory guideline range of 168 to 210 months, Petitioner's armed career criminal designation resulted in an effective sentencing range

---

[2] All grounds for collateral relief raised in the original petition or supplements thereto [Docs. 21, 46, 64, 65, 66], with the exception of the *Johnson*-based claim preserved in his amended petition [Doc. 70], will be **DENIED** and **DISMISSED WITH PREJUDICE** in light of Petitioner's knowing and voluntary forfeiture of the same [Doc. 64-1].

2

of 180 to 210 months' incarceration [*Id.* ¶¶ 66, 67]. The Court eventually sentenced Petitioner to 180 months' incarceration followed by two years' supervised release [Doc. 19].

No appeal was taken and, as a result, Petitioner's conviction became final for purposes of § 2255(f)(1) on August 15, 2012, at the expiration of time to appeal. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (explaining an unappealed judgment of conviction becomes final when the time for filing a direct appeal has elapsed); Fed. R. App. Proc. 4(b)(1)(A)(i)("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of . . . judgment."). Within a year of that date, Petitioner filed his timely, original petition pursuant to 28 U.S.C. § 2255 [Doc. 21]. On June 3, 2016, he amended the original petition to include the instant claim based on *Johnson* [Doc. 70].

## II. TIMELINESS OF PETITION

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). Supreme Court precedent makes clear that *Johnson*'s invalidation of the ACCA residual clause amounted to a new rule made retroactively applicable on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on

3

collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). Thus, the sole claim for collateral relief contained in Petitioner's amended petition falls safely within the one-year period for requesting *Johnson*-based relief [Doc. 70].

**III.   STANDARD OF REVIEW**

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

**IV.   ANALYSIS**

The supplement contains a single ground of collateral attack, arguing *Johnson* removed at least two of Petitioner's prior convictions from § 924(e)'s definition of "violent felony" and, as a result, that Petitioner can no longer be properly classified as an armed career criminal subject to the ACCA's enhanced mandatory minimum sentence [Doc. 70].

   **A.  Categorization as Career Offender after *Johnson v. United States***

The ACCA mandates a 15-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug

4

offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015). Nor does *Johnson* disrupt the use of a defendant's prior serious drug offenses as an independent form of ACCA predicate conviction. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 U.S. Dist. LEXIS 132307, at *34–35 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

The validity of Petitioner's sentence thus depends on whether three or more of his prior convictions qualify as "serious drug offenses" under § 924(e)(2)(A) or, in alternative, "violent felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (explaining courts need not decide what import, if any,

5

*Johnson* has on the Sentencing Guidelines' residual clause where the petitioner's prior convictions qualify as predicate offenses independent of the now-defunct residual clause). The Court finds that at least three of Petitioner's prior Michigan convictions used to support his categorization as an armed career criminal—both convictions for felony breaking and entering and the conviction for delivery and manufacture of cocaine [PSR ¶¶ 27–28, 37]—so qualify.

As an initial matter, the Court finds that the 2003 conviction for delivery and manufacture of cocaine involved the possession of a controlled substance with intent to distribute and carried a maximum penalty of imprisonment in excess of ten years required to qualify as a serious drug offense under § 924(e).[3] *See* M.C.L. §§ 333.7401(1), (2)(a) (2003) (listing several possible maximum terms of incarceration, the shortest of which is 20 years). Because the conviction qualifies as a "serious drug offense" under § 924(e)(2)(A)(ii), it is unaffected by *Johnson*. *See, e.g.*, *United States v. Jenkins*, 613 F. App'x 754, 755 (10th Cir. 2015) (deeming *Johnson* "irrelevant" where enhancement stemmed from drug offenses); *United States v. Darling*, 619 F. App'x 877, 880 n.5 (11th Cir. 2015) (stating that *Johnson* "has no bearing" on whether prior convictions qualify as serious drug offenses under the ACCA).

---

[3] In a supplemental pro se pleading filed after substitute CJA counsel submitted the amended petition, Petitioner appears to argue that his prior controlled substance offenses no longer qualify as serous drug offenses [Docs. 73-1, 78 (pro se letters)]. Because Petitioner's conviction delivery and manufacture of cocaine and convictions for breaking and entering qualify as predicate offenses under the ACCA, the Court declines to address whether or not Petitioner's conviction for delivery and manufacture of marijuana was properly classified as a predicate serious drug offense.

Further, both convictions for breaking and entering qualify as predicate offenses under the ACCA enumerated-offense clause because the statute of conviction is divisible and the variants of that offense for which Petitioner was convicted qualify as generic burglaries.[4]

To determine whether a particular offense qualifies as a violent felony under § 924(e), courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which courts look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If violation of the statute invariably involves the use, attempted use, or threatened use of violent force or falls within the generic definitions of burglary, arson, or extortion, then the conviction categorically qualifies as a violent felony and the courts' task is complete. It is only

---

[4] To the extent Petitioner suggests that the separate acts of breaking and entering constitute a single offense for purposes of ACCA enhancement because the sentencing court vacated the separate sentences on those counts after he was convicted and sentenced under the Michigan habitual offender statute, the Court disagrees.

On two separate occasions, Petitioner was charged with breaking and entering into an occupied dwelling, and doing so as a habitual offender [PSR ¶¶ 27–28]. The sentences for the former were vacated simultaneously with imposition of sentence for the latter [*Id.*]. *See Rogers v. Haas*, No. 2:11-cv-15485, 2013 WL 3188852, at *2 n.1 (E.D. Mich. May 24, 2013) (explaining that courts at the time would "impose a sentence on both the underling offenses of conviction and a separate habitual offender sentence, then vacate the underlying offense sentence"). By its own terms, the Michigan habitual-offender statute cannot be applied in the absence of a conviction for a second or subsequent felony, because it functions as a multiplier of the maximum sentence for the underlying offense. *See, e.g.*, *United States v. Carnes*, 113 F. Supp. 2d 1145, 1162 (E.D. Mich. 2000) (rejecting claim that various breaking and entering convictions were themselves "vacated" upon imposition of the habitual offender sentence because the result of such action would be the absence of the very felony convictions required for application of the habitual offender statute). As such, vacation of individual sentences in the favor of the enhanced habitual offender sentence does not mean that the two underlying offense count as a single predicate for purposes of § 924(e). *Accord Ellis v. Barnhart*, No. 06-13772, 2009 WL 3064786, at *11 (E.D. Mich. Sept. 21, 2009) (explaining that the relevant habitual offender statue required that the habitual offender status be charged as a separate crime and proven to a jury (citing *People v. Morales*, 618 N.W.2d 10, 16 (Mich. Ct. App. 2000))).

7

when the statute criminalizes conduct in excess of that covered by the use-of-physical-force and enumerated-offense clauses, that courts must determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple, alternative version of the crime. *Id.* at 2281. When faced with a divisible statute, courts resort to the "modified categorical approach," consulting "a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* An indivisible statute is one that contains a single crime, set of elements. *Mathis*, 136 S. Ct. at 2249. An indivisible statute is not rendered divisible simply because it includes a "list[] [of] multiple, alternative means for satisfying one (or more) of its elements." *Id.* at 2247–48. Because the categorical approach is concerned with elements instead of the "facts underlying [the] conviction," *Descamps*, 133 S. Ct. at 2285, courts are prohibited from using the analysis to distinguish between several competing factual means for satisfaction of a single, overly-broad element. *Mathis*, 136 S. Ct. 2253–54. As a result, the violation of an overly broad, indivisible statute cannot serve as a predicate offense or basis for ACCA enhancement.

To determine whether a particular criminal statute lists alternative elements or alternative means for committing a single element, courts must consider: (1) the text of the statute; (2) any state court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction," i.e., charging documents and jury instructions, for the "limited purpose" of distinguishing between means and elements. *Id.* at 2256–57. With regard to the third factor, the Supreme Court has provided the following hypothetical:

> Suppose, for example, that one count of an indictment and correlative jury instructions . . . use a single umbrella term like "premises" . . . the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. Conversely, an indictment and jury instructions could indicate, by

8

referencing one alternative term to the exclusion of all others, that the statue contains a list of elements, each one of which goes toward a separate crime.

*Id.* at 2257. Applying the foregoing analysis to Mich. Comp. L. § 750.110 (1990) leads the Court to conclude that the statute is comprised of alternative versions of the crime as opposed to a single crime accompanied by a defining list of factual, locational means.

At the time of Petitioner's convictions, the relevant criminal statute read:

Any person who shall break and enter with intent to commit any felony, or any larceny therein, any tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat or ship, railroad car or any private apartment in any such of buildings or any unoccupied dwelling house, shall be guilty of a felony punishable by imprisonment in the state prison not more than 10 years. Any person who breaks and entered any occupied dwelling house, with intent to commit any felony or larceny therein, shall be guilty of a felony punishable by imprisonment in the state prison for not more than 15 years.

Mich. Comp. L. § 750.110 (1990). The inclusion of tents, boats, ships, and railroad cars expands the provision beyond "generic burglary," which the Supreme Court has defined as any conviction, "regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Further, not every violation of the statute invariably involves the use, threatened use, or attempted use of physical force. As such, this Court's ability to rely on violations of Mich. Comp. L. 750.110 (1990) as predicate violent felonies for purposes of § 925(e) depends on whether the statute is divisible or indivisible.

Unlike the Iowa statute held to be indivisible in *Mathis*,[5] the Michigan Supreme Court does not appear to have addressed whether the locations listed in Mich. Comp. L. § 750.111

---

[5] In *Mathis*, the Supreme Court held that: (1) a prior conviction does not qualify as a generic form of a predicate violent felony for purposes of the ACCA if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former; and (2) Iowa's burglary statute—

9

(1990) are elements that must be found by a jury, or are factual means by which a singular offense may be committed. *Cf.* 136 S. Ct. at 2251 (concluding the Iowa statue was indivisible in part because the Iowa Supreme Court held that the list of locations served as "'alternative method[s] of committing [the] single crime' of burglary" so that the jury need not agree on which of the locations was actually involved (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981))). Further, the Michigan Court of Appeals decisions are inconclusive. *Compare People v. Baker*, No. 301705, 2015 WL 639336, at *1 (Mich. Ct. App. Feb. 28, 2012) (including the type of location as part of the elements of the offense), *People v. Huggins*, No. 257264, 2006 WL 335691, at *1 (Mich. Ct. App. Feb. 14, 2006) (same), *and People v. Mason*, No. 220082, 2001 WL 735522, at *2 (Mich. Ct. App. Feb. 20, 2001) (same), *with People v. Walters*, 465 N.W.2d 29, 31 (Mich. Ct. App. 1990) (referring to the locations as "examples). Because Michigan law fails to provide a clear answer, *Mathis* instructs that the Court turn to the charging documents and jury instructions for additional guidance. 136 S. Ct. at 2256–57.

Michigan's model jury instructions describe the elements of breaking and entering by reference to a specific place, a building. Mich. Model Crim. Jury Instruction 25.1. A footnote appended to the same directs courts to substitute other places broken into—tent, hotel, office, store, shop, warehouse, barn, granary, factory, building, structure, boat, ship, railroad car, private apartment, unoccupied dwelling house, or occupied dwelling house—as necessary. *Id.* at n.1. Similarly, the charging documents in instant case—which charge Petitioner with breaking and entering into an "occupied dwelling"—appear to treat location of the offense as a specific

---

which defines "structure" to include any building, structure, [or] land, water, or air vehicle"— had broader locational component than generic burglary. 136 S. Ct. 2247–48, 53–54. Because the "structure" element of Iowa's burglary statute was broader than the parallel element of generic burglary, the Court concluded that the petitioner's prior convictions were incapable of supporting enhancement under the enumerated offense clause. *Id.* at 2257.

10

element to be found by the jury [Doc. 70-1 pp. 5, 20]. A third and final piece of evidence that the list of locations contained in Mich. Comp. L. § 750.110 (1990) serve as alternative elements, each comprising a self-contained variant of breaking and entering is that the criminal provision articulates distinct punishments depending on the location of the offense. *See* Mich. Comp. L. § 750.110 (1990) (providing 15 year mandatory minimum sentence for breaking and entering into an occupied dwelling and 10 year mandatory minimum for breaking and entering into any of the other listed locations). Where "statutory alternatives carry different punishments, . . . they must be elements." *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

For the reasons outlined above, the Court finds that the locations set forth in Mich. Comp. L. § 750.110 (1990) amount to a list of independent elements, satisfaction of which equate to the commission of alternative versions of the crime. As such, the statute is divisible and the modified categorical approach can be used to determine whether the particular variants for which Petitioner was held responsible categorically qualify as violent felonies independent of the residual clause held unconstitutional in *Johnson*. Here, Petitioner's charging documents reveal that both convictions involved breaking and entering into an occupied dwelling house, not a tent, boat, ship, or railroad car [Doc. 70-1 pp. 5, 20]. Because the crimes of conviction involved the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime, the offenses fall safely within *Taylor*'s generic definition of burglary. Because the offenses qualify as violent felonies independent of the now-defunct residual provision, *Johnson* cannot operate as a basis for the requested collateral relief.

## IV. CONCLUSION

For the reasons discussed above, Petitioner's amended petition for collateral relief [Docs. 21, 70] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY**

11

any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER ACCORDINGLY.**

                                            */s/ Harry S. Mattice, Jr.*
                                            HARRY S. MATTICE, JR.
                                            UNITED STATES DISTRICT JUDGE